**EXHIBIT 1**

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
25-A-00998-3
2/4/2025 4:53 PM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | |
|---|---|
| BRANDIE CRAIG, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION FILE NO. |
| ) | |
| LENNAR CORPORATION, ) | |
| ) | 25-A-00998-3 |
| Defendant. ) | |

**SUMMONS**

TO LENNAR CORPORATION: JON JAFFE (CEO) 5505 WATERFORD DISTRICT DRIVE MIAMI, FL 33126

You are hereby summoned and required to file with the Clerk of said Court and serve upon Plaintiff's attorney, whose name and address is:

J. Mark Brittain
Mark Brittain, P.C.
245 Country Club Drive, Suite 200H
Stockbridge, Georgia 30281
770-389-3356

an Answer to the Complaint, which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This 5th day of February, 2025.

Tiana P. Garner
Clerk of Superior Court of Gwinnett County

By:

Deputy Clerk

RECEIVED
FEB 1 2 2025
LENNAR LEGAL DEPT MIAMI

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
25-A-00998-3
2/4/2025 4:53 PM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| BRANDIE CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| LENNAR CORPORATION, | ) | 25-A-00998-3 |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR BREACH OF CONTRACT, QUANTUM MERUIT, UNJUST ENRICHMENT, ATTORNEY'S FEES, AND COURT COSTS

COMES NOW BRANDIE CRAIG, Plaintiff in the above-styled case, by and through her undersigned counsel, and hereby files this Complaint for Breach of Contract, Quantum Meruit, Unjust Enrichment, Attorney's Fees, and Court Costs (hereinafter "Complaint") against Defendant Lennar Corporation, respectfully showing the Court the following:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff is, and was at all times relevant to the Complaint, a resident of the State of Georgia.

2.

Defendant is a Delaware corporation with a principal office at 5505 Blue Lagoon Drive, Miami, Florida 33126.

3.

Defendant regularly does business in Georgia, although it formally withdrew from the State on December 22, 2022.

4.

Defendant may be served pursuant to O.C.G.A. § 14-2-1510(b) by serving a copy of the Summons and Complaint on the Georgia Secretary of State and a second copy on Defendant's chief executive officer and president Jon Jaffe by certified mail or statutory overnight delivery, return receipt requested, at the principal office shown in its application for a certificate of authority, 5505 Blue Lagoon Drive, Miami, Florida 33126.

5.

Alternatively, Defendant may be served by the Sheriff of Miami-Dade County, Florida or by a private process server appointed by this Court at its corporate headquarters located at 5505 Waterford District Drive Miami, Florida 33126.

6.

Venue is proper in Gwinnett County pursuant to O.C.G.A. § 14-2-510(b)(1), as Defendant's last registered office was located in the county.

7.

The Court has personal jurisdiction over the parties, as Plaintiff is a resident of Georgia and Defendant transacts business and committed a tortious act or omission in the state.

8.

The Court has subject matter jurisdiction over the case, as Plaintiff is seeking monetary damages.

## STATEMENT OF FACTS

9.

Plaintiff is a licensed real estate salesperson.

10.

Defendant is a corporation that builds, sells, and finances homes throughout the United States.

11.

In or about April 2017, Plaintiff and Defendant entered into a NHC Compensation Agreement, wherein Plaintiff agreed to sell and assist in the conceptual design of Defendant's homes as a new home consultant, and Defendant, in turn, agreed to pay Plaintiff a commission of 1.5 percent for said sales and design assistance.

12.

Plaintiff and Defendant renewed the Agreement on a yearly basis, with the last renewal occurring on or about June 1, 2023.

13.

The NHC Compensation Agreement required Plaintiff's real estate license to be inactive while she was employed by Defendant.

14.

While Plaintiff's license was initially inactive when she was hired by Defendant in 2017, she temporarily reactivated it in or about 2020 to purchase her personal residence in McDonough, Georgia.

15.

Plaintiff's coworkers regularly reactivated their licenses to buy or sell their own personal properties.

16.

Plaintiff believed that she had deactivated her license after the purchase of her residence had closed, but due to mistake or error, it was not deactivated.

17.

From 2017 to 2023, Plaintiff sold and assisted in the conceptual design of homes for Defendant, and Defendant paid her commissions for said sales and design assistance.

18.

In or about November 2023, Defendant began firing employees whose real estate licenses had been active while employed by Defendant.

19.

Many of Plaintiff's coworkers who had activated their licenses during their employment to buy or sale their own homes quickly deactivated their licenses when they learned that Defendant was reviewing the status of their licenses.

20.

Plaintiff did not deactivate her license because she believed that she had done so in 2020.

21.

On or about November 15, 2023, Plaintiff's superior called her and said that Defendant had noticed that she still had an active real estate license.

22.

Plaintiff told her superior that she did not realize that she had not deactivated her license but would do so immediately.

23.

Plaintiff's superior told her that he would call her back about the matter.

24.

Plaintiff continued to work for Defendant for a week after the telephone conversation with her superior.

25.

On or about November 21, 2023, Defendant fired Plaintiff for having an active real estate license; it did not fire the coworkers who had changed their status right before the review.

26.

At the time of termination, Defendant owed Plaintiff approximately $49,017.03 in commissions from sales that were fully funded and that had closed between November 3, 2023 and November 10, 2023.

27.

Plaintiff was owed an additional $23,402.00 in commissions for the five sales that she closed during her last week working for Defendant.

28.

Plaintiff received a payroll ticket showing that Defendant had paid her $49,017.03 for the November 3 through November 10, 2023 sales, but Defendant stopped the transfer of funds to her account at the last minute.

29.

Defendant never paid Plaintiff the $23,402.00 in commissions that she earned during her last week of employment.

30.

Defendant also never paid Plaintiff the commissions that she had earned for sales that she had procured that were set to close after her final week of employment, which totaled approximately $100,000.00.

31.

Defendant currently owes Plaintiff an estimated $172,419.03 in commissions at the time of this Complaint.

## COUNT ONE: BREACH OF CONTRACT

32.

Plaintiff realleges and incorporates by reference Paragraphs 1 through 31 of the Complaint as if they were fully restated verbatim herein.

33.

In or about April 2017, Plaintiff and Defendant entered into a NHC Compensation Agreement that was renewed yearly, with the last renewal occurring on or about June 1, 2023.

34.

The NHC Compensation Agreement required Defendant to pay Plaintiff a commission of 1.5 percent for sales that she had facilitated where the sale closed and title passed to the homebuyer and for sales in which she helped to conceptually design the homes.

35.

Defendant breached the NHC Compensation Agreement by failing to pay Plaintiff commissions for sales that she had facilitated where the sale had closed and title passed to the homebuyer and where she had assisted in the conceptual design of the home.

36.

Plaintiff incurred damages as a result of Defendant's breach, including, but not limited to, the loss of $72,419.03 in commissions for sales that had closed before she was terminated and approximately $100,000.00 in additional commissions for sales that closed thereafter.

37.

Defendant having caused said damages, it is liable to Plaintiff for same, in an amount to be determined at trial.

## COUNT TWO: QUANTUM MERUIT

38.

Plaintiff realleges and incorporates by reference Paragraphs 1 through 37 of the Complaint as if they were fully restated verbatim herein.

39.

Since 2017, Plaintiff has provided Defendant with services, including, but not limited to, selling and assisting in the conceptual design of Defendant's homes in Georgia.

40.

Defendant had reasonable notice that Plaintiff would be providing said services with the expectation of being paid for same.

41.

Defendant accepted Plaintiff's services but refused to pay Plaintiff all commissions and payments owed after terminating her employment.

42.

Defendant, therefore, is liable to Plaintiff under a theory of quantum meruit for the value of Plaintiff's services, in an amount to be determined at trial.

## COUNT THREE: UNJUST ENRICHMENT

43.

Plaintiff realleges and incorporates by reference Paragraphs 1 through 42 of the Complaint as if they were fully restated verbatim herein.

44.

Since 2017, Defendant has induced or encouraged Plaintiff to provide something of value to Defendant.

45.

In particular, Defendant has encouraged Plaintiff to sell and assist in the conceptual design of its houses in Georgia.

46.

Plaintiff sold and assisted in the conceptual design of Defendant's houses with the expectation that Defendant would be responsible for the costs of her services.

47.

Defendant knew of the benefit being bestowed upon it by Plaintiff's services and affirmatively chose to accept the benefit.

48.

Defendant would unfairly profit from Plaintiff's services if it were allowed to retain the benefit of her services without compensating Plaintiff for same.

49.

Defendant, therefore, is liable to Plaintiff for the value of the benefit that it received and retained from Plaintiff's services, in an amount to be determined at trial.

## COUNT FOUR: ATTORNEY'S FEES AND COURT COSTS

50.

Plaintiff realleges and incorporates by reference Paragraphs 1 through 49 of the Complaint as if they were restated verbatim herein.

51.

Defendant's actions have been in bad faith, stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

52.

As such, Plaintiff is entitled to attorney's fees and costs of court from Defendant, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays:

a. That Defendant be served with the Summons and Complaint as provided by law;

b. That Plaintiff be awarded actual and such other damages authorized by law;

c. That Plaintiff be awarded attorney's fees and court costs; and

d. For such other and further relief as this Court deems just and equitable under all circumstances alleged and contained herein.

This 4th day of February, 2025.

/s/ J. Mark Brittain
J. MARK BRITTAIN
Counsel for Plaintiff
Georgia Bar No. 083260

MARK BRITTAIN, P.C.
245 Country Club Drive, Suite 200H
Stockbridge, Georgia 30281
770-389-3356 (phone)
770-389-3540 (fax)
mark@markbrittain.com

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| BRANDIE CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| LENNAR CORPORATION, | ) | 25-A-00998-3 |
| | ) | |
| Defendant. | ) | |

## VERIFICATION

I, **BRANDIE CRAIG,** personally appear before the undersigned Notary Public and declare under oath that I am the Plaintiff in the above-styled case.

I have read the Complaint and know the contents thereof. The facts contained in the Complaint are true of my own knowledge, except as to those matters that are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 4th day of Feb, 2025.

_____
**BRANDIE CRAIG**, Plaintiff

Sworn to and subscribed before me
this 4th day of February, 2025.

_____
Notary Public

My commission expires 9/4/28